**James FRIEDMAN, Plaintiff,**

**v.**

**L.P. YOUNG, Correctional Office, F.C.I. Otisville, New York, Defendant.**

**No. 87 Civ. 3641 (RWS).**

United States District Court,
S.D. New York.

Dec. 14, 1988.

James Friedman, Danbury, Conn., pro se.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Paula T. Dow, Asst. U.S. Atty., New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant L.P. Young ("Young"), a correction officer at the Federal Correctional Institution, Otisville, New York ("Otisville") has moved under Fed.R.Civ.P. 12(b)(6) for an order dismissing the complaint of plaintiff James Friedman ("Friedman"), *pro se*, an inmate at Otisville or alternatively for summary judgment under Rule 56, Fed.R.Civ.P. the motion was submitted on September 16, 1988 and is granted for the reasons set forth below.

*The Complaint*

The complaint, understandably short and succinct states as follows:

4. Plaintiff is presently incarcerated at F.C.I. Otisville, New York, under Federal I.D. # 11696–054 at P.O. Box 1000, Otisville, New York, 10963.

5. Defendant L.P. Young is a Federal Employee at F.C.I. Otisville, as such he is responsible for implementation of all Bureau of Prisons Rules and Policies.

6. On or about May 7, 1987, plaintiff was in the Segregation Unit, at the above address, when the defendant during a routine Pat Search fondled the plaintiffs genitals and anus.

7. When the plaintiff refused these on coming Sexual advances the defendant proceeded to tear apart the plaintiff's cell.

8. Plaintiff had to request to be returned to his cell to inventory it to see if anything was missing.

9. Plaintiff found his cell in shambles when he returned and Legal Documents missing.

10. Plaintiff received an incident report for calling the defendant a dick because the plaintiff refused the defendants sexual advances.

*The Facts*

Young has submitted an unrebutted affidavit which states as follows:

2. In May, 1987 I was assigned to the Administrative Detention Unit at FCI Otisville. The Administrative Detention Unit is part of the Special Housing Unit for inmates who, *inter alia*, must be segregated from the institution's general population.

3. On May 7, 1987 I responded to a request by inmate James Friedman that he visit the law library. At that time Friedman was housed in the Administrative Detention Unit. The law library is located on a lower floor of the Administrative Detention Unit.

4. Upon arriving at Friedman's cell, I handcuffed him by directing him to extend his wrists and lower arms through the cell door food slot. I then unlocked and opened the cell door and directed Friedman to exit the cell. In Friedman's hands was a folder of legal papers which he later carried to the law library.

5. The F.C.I. Otisville Segregation Unit Officer Post Orders ("post order") in effect at that time mandated that "[i]nmates will receive a pat search every time they come out of their cell." The pat search is intended to uncover any contraband that the inmate might be concealing.

6. Pursuant to the pat search procedures in effect, I first searched the folder of legal papers which Friedman held in his hands. I discovered no contraband in that folder. I next conducted a pat search of Friedman's body from behind. Friedman protested the search. I responded by telling Friedman that I was just doing my job. The pat search took place in the corridor outside Friedman's

cell, while he was fully clothed, and lasted approximately 15–20 seconds.

7. After the pat search I escorted Friedman down the corridor directly to the law library. I removed Friedman's handcuffs after he was inside the law library and the door was locked.

8. Institution Supplement 5270.5b(12) stipulates that "[e]ach cell within the [Special Housing] unit will be subjected to security/contraband inspection a minimum of once per week."

9. After leaving the law library I returned to Friedman's cell and conducted a security/contraband search.

10. The search of Friedman's cell revealed several contraband items. The contraband consisted of a ball point pen, a cup and a paperback book, which were Friedman's personal property, as well as two magazines, items which were in excess of authorized quantities, as stipulated in Institution Supplement 5270.5b.

11. I gathered the contraband and removed it to Friedman's locked, which was located in the property room down the hall from the law library. As I proceeded to the property room with the contraband, Friedman saw me carrying the articles from his cell and yelled "You're a real dick." At that time Friedman was still locked in the law library. He then asked to be returned to his cell.

12. After returning from the property room, I escorted Friedman back to his cell, directed him inside, and unhandcuffed him. Immediately Friedman began to yell that I had torn his room apart and that some legal papers stored in his cell were missing.

*Immunity and Common Law Tort*

To the extent Young has alleged a common law tort, his claim is dismissed because the record establishes even in the complaint that Young acted within the scope of his employment when he conducted the pat-down.

▮ Federal employees have long been entitled to absolute immunity from common law tort liability for acts committed within the scope of their official duties, so long as the acts are discretionary in nature. *See Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 583, 98 L.Ed.2d 619 (1988); *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *McManus v. McCarthy*, 586 F.Supp. 302, 303–04 (S.D.N.Y. 1984).

In order for absolute immunity from common law tort liability to attach, two factors must be met. First, the allegedly tortious acts must fall within the federal employee's scope of authority, or the outer perimeter of the employee's line of duty. *Westfall v. Erwin*, 108 S.Ct. at 584. *See also Sprecher v. Von Stein*, 772 F.2d 16, 18 (2d Cir.1985). Accordingly, "[i]t is only necessary that the action of the federal official bear some reasonable relationship to and connection with his duties and responsibilities." *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967). *See also Claus v. Gyorkey*, 674 F.2d 427, 431 (5th Cir.1982). In defining the "outer perimeter" one court has noted that "the act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." *Norton v. McShane*, 332 F.2d 855, 858–59 (5th Cir. 1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965) (citation omitted).

▮ Here, Young's pat search of plaintiff's person was conducted pursuant to FCI Otisville's post order on searching inmates who are leaving their cells. Thus, his actions fell well within his authority as a correctional officer in the Administrative Detention Unit.

The second factor that must be established is that the federal employee exercised judgment or discretion. *Westfall v. Erwin*, 108 S.Ct. at 584. *See also, Huntington Towers Ltd. v. Franklin National Bank*, 559 F.2d 863, 870 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978); *Adelona v. Webster*, 654 F.Supp. 968, 977 (S.D.N.Y.1987). In evaluating this criterion in the context of

correctional officers, the Seventh Circuit noted that "[a]lthough imposition of the duty [to maintain a prison] is clear, the manner in which the Department of Corrections—through its officers—is to meet the statutory obligation is not defined in such a way that it can be met without the exercise of judgment by the Department and its employees." *Adden v. Middlebrooks,* 688 F.2d 1147, 1152 (7th Cir.1982). *See also Sampson v. King,* 693 F.2d 566 (5th Cir. 1982).

In order to enforce security regulations at federal correctional institutions, correctional officers are required to make on-the-spot determinations. Young conducted a pat-down of the plaintiff's person pursuant to prison regulations. His actions fell within the scope of his official duties and were a proper exercise of discretion within the broad guidelines of the prison regulations. The complaint with respect to the alleged fondling, which asserts only common law tort claims, must be dismissed.

*Constitutional Tort*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* the Supreme Court held that a federal official can be individually liable for money damages if he personally violates a well-established constitutional right. 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971). *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, unless the complaint in a *Bivens* case "states a compensable claim for relief under the Federal Constitution, it should not survive a motion to dismiss." *Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978).

■ Not every common law tort committed by a law enforcement officer gives rise to a constitutional claim. *See e.g., Black v. Stephens,* 662 F.2d 181, 188 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

*Daniels v. Williams* offered examples of this principle, observing that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner" and "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official." 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979). The same is true of the common law torts of assault and infliction of emotional distress or mental anguish.

*Johnson v. Glick* held that only in certain limited circumstances does an officer's use of undue force violate an individual's due process rights. The test is whether the officer's conduct "shocks the conscience." 481 F.2d 1028, 1032–33 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

This court, applying the *Johnson* "shocks the conscience" test, has granted summary judgment to law enforcement officers because the use of force alleged by the plaintiff did not rise to the level of a constitutional claim. In *Santiago v. Yarde,* summary judgment was granted to a prison guard accused of using undue force in removing the plaintiff from his cell during an institutional search procedure. 487 F.Supp. 52, 53 (S.D.N.Y.1980). *See also Fairchild, Arabatzis & Smith, Inc. v. Sackheim,* 451 F.Supp. 1189, 1192–93 (S.D. N.Y.), *aff'd mem.,* 591 F.2d 1330 (2d Cir. 1978) (dismissing *Bivens* claim even though complaint may have stated a claim for common law battery).

■ Accepting the allegations of the complaint, the line between a pat down and a fondle is too insubstantial to support the burden of supporting a claim for constitutional tort.

*Deprivation of Property*

■ A governmental taking of property can give rise to a Fifth Amendment due process claim only if a plaintiff can establish three elements: (1) a property interest; (2) a deprivation under color of law; and (3)

lack of due process. *Estes-El v. New York,* 552 F.Supp. 885, 889 (S.D.N.Y.1982). *See also Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ In *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court held that the due process clause is not implicated by an official's negligent act which results in the unintended loss of or injury to life, liberty or property. The Court had previously addressed the intentional deprivation of property by official actions in *Hudson v. Palmer,* holding that:

> an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.

468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984). *Accord Hikel v. King,* 659 F.Supp. 337, 340 (E.D.N.Y.1987). Thus, to the extent that the complaint is construed to allege a tortious, negligent act on the part of Young, it must fall. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Accord, Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987).

■ Moreover, to the extent that the complaint alleges a tortious, intentional act by Young, it must also fall because of the availability to plaintiff of a postdeprivation remedy.

The Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.,* provides for an action against the United States in tort for property taken or lost by federal employees acting within the scope of their employment. In *Parratt,* the Supreme Court held that such post-deprivation remedies are sufficient to satisfy the due process clause of the Fourteenth Amendment. The Court noted that to allow the due process clause to cover all such tort violations would stretch the clause beyond the limits intended by the Framers of the Constitution. 451

U.S. at 544, 101 S.Ct. at 1917. *See also Rudow v. City of New York,* 822 F.2d 324, 330 (2d Cir.1987).

Friedman has available to him a remedy against the United States under the Federal Tort Claims Act for any loss or deprivation of property which may have been caused by Young while acting within the scope of his employment. Therefore, his allegations of seizure and loss of property do not state a claim for violation of his rights under the Fifth Amendment, and must be dismissed.

*Qualified Immunity*

■ Young has the right to assert qualified immunity from liability for any unconstitutional conduct so long as his conduct was reasonable and did not violate clearly established law of which they knew or should have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987).

In order to balance the competing interests of providing plaintiffs redress from official misconduct and protecting officials from burdensome and "insubstantial" claims, the Court adopted an objective test to weigh the factors. Under this objective standard, federal correctional officers, like other government officials performing discretionary functions, are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. The standard allows an officer's conduct to be measured by what a reasonable officer should have known about the law and the reasonableness of his conduct under the law. *Wyler v. United States,* 725 F.2d 156, 159–60 (2d Cir.1983). As the Supreme Court recently reiterated:

> The relevant question ... is the objective ... question whether a reasonable officer could have believed [petitioner's conduct] to be lawful, in light of clearly established law and the information the ... officer possessed.

438

*Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

In conducting the pat-down search, Young exercised discretionary authority within the scope of his official duties. Assuming his pat-down included touching Friedman's genitalia while conducting the search, such conduct is not unreasonable in the absence of any showing of excessive force. His conduct was at all times reasonable. No clearly established principle of law articulated by the Supreme Court or this Circuit holds that Young's conduct of a routine pat-down violates the Constitution.

*Availability of Summary Judgment*

In order for Friedman to defeat Young's motion for summary judgment, he must raise triable issues of fact not only as to the propriety of Young's conduct, but also as to his entitlement to qualified immunity. He must come forward with facts showing that the unlawfulness of Young's conduct would be apparent to a reasonable correctional officer. *See Anderson v. Creighton*, 107 S.Ct. at 3039.

However, Friedman's failure to rebut Young's affidavit is not necessarily final, given his *pro se* status. The record on this motion will remain open for thirty (30) days to reopen the judgment in the event of a further factual submission by Friedman within that time period. Submit judgment on notice.

It is so ordered.