Mario HERRERA, Plaintiff,

v.

Charles J. SCULLY, Superintendent of Green Haven Correctional Facility; Charles R. Winch, First Deputy Superintendent of Green Haven Correctional Facility; Robert J. Seitz, Deputy Superintendent at Green Haven Correctional Facility; John Johnson, Correction Officer at Green Haven Correctional Facility; Edgar Maldonado, Correction Counselor at Green Haven Correctional Facility; Patricia Miller, Supervisor of Mailroom at Green Haven Correctional Facility; and Pat Raimo, Supervisor of Inmate Grievance Resolution at Green Haven Correctional Facility, Defendants.

No. 88 Civ. 6616 (RWS).

United States District Court, S.D. New York.

March 8, 1993.

Mario Herrera, Dannemora, NY, plaintiff, pro se.

Robert Abrams, Atty. Gen., by Yvonne Powe, Asst. Atty. Gen., of counsel, New York City, for defendants.

OPINION

SWEET, District Judge.

This is an action brought by the plaintiff *pro se* Mario Herrera ("Herrera") pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985, against defendants Charles J. Scully, Charles R. Winch, Robert

J. Seitz, John Johnson, Edgar Maldonado, Patricia Miller, and Pat Raimo (collectively, the "Defendants"), each of whom was employed at the Green Haven Correctional Facility ("Green Haven") in Stormville, New York during 1987. The Defendants have moved pursuant to Rule 56(b), Fed.R.Civ.P., for an order granting summary judgment dismissing the Complaint against them on the ground that there is no genuine issue as to any material fact in dispute, and that they are entitled to judgment as a matter of law.

Oral argument was heard on the motion on November 3, 1992. The Defendants submitted additional documents on November 4, 1992, and the motion is considered fully submitted as of that date.

For the reasons set forth below, the Defendants' motion is granted.

PARTIES

Herrera is an inmate incarcerated within the New York Department of Correctional Services ("DOCS") system and an accomplished *pro se* litigant.[1] During 1987, he was incarcerated in Green Haven, and he is currently detained in the Clinton Correctional Facility, Dannemora, New York.

The Defendants were all employed by DOCS in 1987 and worked at Green Haven. Each is sued in his or her official capacity at Green Haven at least during the period from January 1987 to June 1988: Charles J. Scully ("Scully") as Superintendent, Charles R. Winch ("Winch") as First Deputy Superintendent, Robert J. Seitz ("Seitz") as Deputy Superintendent of Security, John Johnson ("Johnson") as a Correction Officer, Edgar Maldonado ("Maldonado") as a Correction Counselor, Patricia Miller ("Miller") as Supervisor of the Correspondence Department, and Pat Raimo ("Raimo") as Supervisor of Inmate Grievance Resolution.

PRIOR PROCEEDINGS

This action has a inexcusably long and tortured history, a history that exposes many of the problems arising out of *pro se* litigation by state prisoners. Herrera commenced this action on September 8, 1988. In his Complaint, he alleges violations of his constitutional rights arising in three separate instances in which his mail was allegedly delayed, lost, given to another inmate, or withheld by the Defendants. During the course of the pre-trial motion practice, Herrera made three prior motions for orders compelling the Defendants to comply with various discovery requests and imposing sanctions. These motions were disposed of in Opinions filed on September 21, 1990, January 16, 1991, and October 9, 1992, familiarity with which is assumed. *See Herrera v. Scully*, 143 F.R.D. 545 (S.D.N.Y.1992) (*"Herrera III"*); *Herrera v. Scully*, No. 88 Civ. 6616 (RWS), 1991 WL 8502, 1991 U.S. Dist. LEXIS 571 (S.D.N.Y. Jan. 16, 1991) (*"Herrera II"*); *Herrera v. Scully*, No. 88 Civ. 6616 (RWS), 1990 WL 144852, 1990 U.S. Dist. LEXIS 12,473 (S.D.N.Y. Sept. 21, 1990) (*"Herrera I"*).

In *Herrera III*, this Court set forth the procedural facts surrounding the initial dismissal of this action as a result of Herrera's failure to comply with an order to submit a joint pretrial order and trial briefs and Herrera's subsequent motion to vacate the order of dismissal. *See* 143 F.R.D. at 547. This Court has also noted the numerous extensions of various discovery and filing cutoff dates requested by the Defendants because this case was assigned to no fewer than three different Assistant Attorneys General. *See Herrera I*, 1990 WL 144852, at *1, 1990 U.S. Dist. LEXIS 12473, at *2. This assigning and reassigning necessarily entailed excessive delays as each Assistant Attorney General was required to begin from scratch, familiarizing herself with the case, compiling the information and documents demanded by Herrera, and preparing a motion for summary judgment. *See id.; see also Herrera III*, 143 F.R.D. at 552 (recounting additional factors causing delays which were attributable to both Herrera and the Defendants).

It is this last act of preparing and pursuing a motion for summary judgment, however,

---

1. The Defendants note that Herrera brought a strikingly similar action against other Green Haven officials. Unfortunately, the disposition of that action, in which summary judgment was granted for the Defendants, appears only in the unpublished opinions of *Herrera v. Scully*, 87 Civ. 1034, slip op. (S.D.N.Y. Mar. 14, 1989), *aff'd*, 895 F.2d 1410 (2d Cir.1989).

that proved the most problematic for the Defendants. After several extensions of the deadline by which the motion was to be made, the Defendants filed such a motion on August 31, 1990. The motion was adjourned in the face of Herrera's continuing discovery demands to facilitate the preparation of his reply, but the completion of discovery was slowed by Herrera's illness. *See Herrera II,* 1991 WL 8502, at *1, 1991 U.S. Dist. LEXIS 571, at *3. When the action was dismissed on June 20, 1991, the motion was necessarily rendered moot and removed from the motion calendar. However, when the action was subsequently reinstated by order of November 11, 1991, the Defendants failed to renew the motion for summary judgment.

In *Herrera III,* the Defendants were order to supply sufficient responses to Herrera's Request for Admissions within 20 days of the date of that Opinion (October 9, 1992), and the action was placed upon the ready trial calendar. *See* 143 F.R.D. at 553. No responses were forthcoming and the trial date was set for November 3, 1992.

On November 2, 1992, the Court executed a Writ of Habeas Corpus Ad Testificandum and had Herrera transported on a two-day journey from Clinton to the Metropolitan Correctional Center in Manhattan for the trial of his action on November 3. In the hindsight provided by only the first few minutes of the proceedings with the Defendants and Herrera, it became obvious that the Court was unwarranted in bringing Herrera to Manhattan for trial.

It was at the outset of the proceedings that the Defendants finally renewed their motion for summary judgment, which rendered Herrera's sojourn entirely superfluous. However, taking advantage of Herrera's presence and in an attempt to expedite the ultimate resolution of this action, the Court placed Herrera on the stand and had him give his sworn affidavit (the "Oral Affidavit") in opposition to the Defendant's motion for summary judgment at that time.

After giving his Oral Affidavit, Herrera moved the Court to allow him to amend his Complaint to name three additional defendants and deem as admitted the statements that the Defendants were ordered to respond to in *Herrera III.* The Defendants objected that the proposed defendants Herrera wanted to add had been known to him for several months. The Court denied both motions and allowed the Defendants to provide responses to the statements at issue in *Herrera III.*

Having received Herrera's testimony into evidence, the Court granted the Defendants' motion on the record presently before it. However, the Court noted that Herrera had been unable to bring any of his files with him from Clinton and indicated that it would reconsider that disposition of the Defendants' motion in light of any additional information or documentation Herrera subsequently were to submit to the Court.

On November 4, 1992, the Defendants filed with the Court their responses to Herrera's Request for Admissions and an affirmation in further support of their motion for summary judgment in response to Herrera's Oral Affidavit. No further information or documentation has been forthcoming from Herrera.

*The Facts* [2]

Herrera contends that his constitutional rights were violated on three separate occasions when his mail was allegedly delayed, lost, given to another inmate, or withheld by the Defendants. He further alleges that Raimo, Miller, and Maldonado deprived him of his constitutional rights by engaging in a conspiracy to cover up the actions of all of the Defendants. This was specifically accomplished by their distorting facts and withholding information when investigations were made by the grievance committee in response to grievances filed by Herrera. As a result of these violations, Herrera claims he effectively was denied access to the courts in violation of his First and Fourteenth Amendment rights. Finally, Herrera claims that the Defendants violated the law of New York

---

**2.** As is discussed in detail below, on the face of a Rule 56 motion for summary judgment, a nonmovant's factual allegations are presumed to be true and all factual inferences are drawn in the nonmovant's favor. Therefore, the factual allegations set forth here are those alleged by Herrera in his complaint and do not constitute findings of fact by the Court.

State by their noncompliance with DOCS Directives 4421 and 4040.

## I. First Violation

On January 28, 1987, Herrera filed a post-verdict motion, in the New York State Supreme Court, in connection with his criminal conviction. He was notified that the motion was placed on the motion calendar for April 2, 1987. On May 26, 1987, Herrera received a copy of the District Attorney's Affirmation in opposition to his motion. Herrera prepared a Reply Affirmation, and on June 3, 1987, he mailed the original to the Kings County Supreme Court by certified mail and a copy to the District Attorney's Office by regular mail by placing them in the Green Haven inmate's mail box. He attached a distribution form to this mail requesting that its cost be deducted from his inmate account.

On June 9, 1987, Herrera's disbursement form of June 3 was processed. That same day, a disbursement form dated May 15, 1987 was also processed, leaving insufficient funds in Herrera's account to cover the expense of sending his legal mail to the court by certified mail. He was informed of this situation when he received the receipt from the disbursement form sent to the court's clerk which had been marked "insufficient funds."

Herrera alleges that, because he was concerned that his Reply Affidavit would not reach the court in a timely manner, he filed a grievance with the Inmate Grievance Resolution Committee ("IGRC") and requested that Scully or a subordinate write to the court and explain why his Affidavit was delayed. Although there was no investigation report setting forth any findings or conclusions regarding the delay in processing Herrera's legal mail by IGRC, the grievance was reviewed by the Office of the Superintendent, and Scully issued a report acknowledging delays in the processing of disbursement forms and legal mail generally and indicating that the problems were being addressed.

Scully also offered to write a letter to the court on Herrera's behalf if Herrera could show that the date his Reply Affirmation was due was three or four working days subsequent to his submission of his disbursement, and that his post-verdict motion was denied because the facility failed to process his mail in a timely manner. It appears that Herrera took no action on this offer, and in any event, no letter was written by Scully to the court.

Herrera's Reply Affirmation was sent to the court by first class mail and reached the court on June 10, 1987. On June 12, 1987, he was notified by the court that his motion was denied. It appears from the record, however, that Herrera did not file his grievance regarding the delay in the mail service until June 17, 1992, five days after he learned his motion had been denied.

## II. Second Violation

On November 2, 1987, while Herrera was confined to his cell for disciplinary reasons, Johnson brought him an envelope containing legal mail. Herrera alleges that the envelope was opened, the letter was attached to the outside of the envelope, and a "contraband receipt" was attached to the letter. The receipt indicated that the envelope had contained two photographs which had been removed by Johnson and turned over to Seitz.

On or about August 12, 1987, Herrera made a Freedom of Information Law appeal to the Assistant Deputy Commissioner of the New York City Police Department, requesting photographs taken of him after his arrest and a copy of the photo array shown to the complainant in his criminal case be sent to him at Green Haven. It was the post-arrest photographs of Herrera which were confiscated by Johnson and given to Seitz.

On November 7, 1987, Herrera wrote to Scully concerning the importance of the photographs for his appeal. Scully referred the matter to Winch, and on December 18, 1987, Winch informed Herrera that the photographs had been lost. Winch requested that Herrera give him the name and address of the agency that sent the photographs so another copy of them could be obtained. Herrera complied with this request.

As of the date of the Complaint, Herrera alleges he had heard nothing more regarding the photographs and that, as a result, he has been hindered from perfecting a meritorious identification issue in his appeal of his crimi-

nal case. On January 20, 1989, Herrera was notified by the Office of the Superintendent that two photographs were in his personal property file in the Inmate Record Coordinator's Office.[3] Herrera also was informed that, pursuant to DOCS Directive 4035, he was not permitted to possess the photographs but that if he needed them for a court case, he could contact the Inmate Record Coordinator ("IRC") who would arrange for the photographs to be included in the papers for filing with the courts.

In a letter dated January 23, 1989, Herrera wrote to Scully, arguing that he should be allowed to have the photographs because they did not fall under the classification of "identification cards" described in DOCS Directive 4035. He refused to make arrangements with the IRC to use the photographs in his legal proceedings, requesting instead that they be forwarded to this Court. This Court received the photographs on February 6, 1989.

In his Oral Affidavit, Herrera testified that the post-verdict motion in which he intended to use the photographs challenged an identification of him based on a photo array admitted in evidence at his trial.

### III. Third Violation

On December 30, 1987, Herrera deposited a manila envelope in the Green Haven inmate mail box. This envelope contained motion papers and supporting exhibits, and attached thereto was a disbursement form requesting that the envelope be mailed via "special delivery" to the Chief Justice of the New York State Family Court. On the envelope Herrera had written, "Legal Correspondence; Privilege [sic] and Confidential"; "Special Delivery, Receipt Requested."

On January 4, 1988, Herrera received the disbursement form marked "insufficient funds," a 2708 form filled out with his name, number, and cell location, and an interdepartmental communication dated January 5, 1988, stating that Herrera was to use the 2708 form to forward legal correspondence with first class mail. The envelope and its

contents were not returned with any of these forms.

On January 5, 1988, Herrera wrote a memo to Miller and acknowledged that he had received the forms and requested that she either process a new disbursement form and forward the legal mail as requested or return the envelope to him. On January 6, Herrera received his memo back from Miller with the new disbursement form but not the envelope. On January 12, Herrera wrote Miller requesting the envelope be returned. He received no response from her.

On January 13, 1988, Herrera filed a grievance with the IGRC, alleging the repetitious withholding of his legal mail. On January 21, Miller sent a memo to Herrera in which she stated that Herrera's disbursement form became detached from the envelope, and that the envelope apparently was sent from Green Haven with the first class mail. On January 26, while Herrera was temporarily absent from Green Haven for an appearance before the Family Court, his grievance was dismissed pursuant to DOCS Directive 4040. Directive 4040 provides that grievances of inmates who are transferred or out before a court may be dismissed with leave to refile if the subject of the grievance is not a departmental matter but rather an intra-facility matter.

Herrera returned to Green Haven on March 14, 1988 and discovered that the envelope in question had not been mailed out by first class mail but instead was in the possession of an inmate, Philip Wu, who had obtained it from another inmate, Neftali Ayala, who had received the envelope from Maldonado. In light of these events, Herrera refiled his grievance on June 8, 1988 and requested that all of his future legal mail be forwarded to Albany and not be processed at Green Haven. Raimo was named to investigate the matter.

The investigation revealed that Maldonado claimed Herrera's envelope and legal papers appeared on his desk during the period that Herrera was before the Family Court. Maldonado did not know where Herrera was locked and inquired of other inmates regard-

---

**3.** It is unclear from the letter whether these photographs are the originals which were subse-

quently found or replacements obtained by Winch.

ing Herrera's whereabouts. An inmate claiming to know Herrera represented that he would be willing to take the papers and give them to Herrera upon his return. Maldonado gave that inmate Herrera's papers. According to the investigation report, the inmate then copied and forwarded the copies of the contents of Herrera's envelope to the Family Court and kept the originals to give to Herrera upon his return. Herrera claims that the motion papers never reached the Family Court.

Upon his review of Herrera's grievance, Scully found that there was no deliberate attempt on the part of the facility or any individual to tamper with, read, delay or otherwise abuse Herrera's legal mail privileges. Scully did state that Maldonado would be apprised of his error and informed that he was not to give the mail of one inmate to any other inmate under any circumstances, and that if an inmate were not available, his mail should be returned to the office of Green Haven's Head Clerk. Maldonado was so informed in an intra-departmental memorandum from Scully.

Herrera's request that his legal mail be sent to Albany was denied on the ground that each facility must process its own legal mail within departmental guidelines. Herrera appealed Scully's decision to Central Office Grievance Review Committee, and the Committee affirmed Scully's decision.

In his Complaint, Herrera does not allege any damages as a result of the failure of these motions papers to be filed with the family court. In his Oral Affidavit Herrera stated that he had been denied visitation by his daughter, while in prison, and that the motion papers and exhibits would have facilitated his having such visitation rights. However, Herrera testified that the State Island Family Court had granted him visitation by his daughter four times a year and order that such visits take place. After a period of time during which no visits had been arranged by the daughter's mother, Herrera brought an action for contempt which was supported by the documents in question, and which the court subsequently denied. Herrera also testified that his daughter has visited him periodically at prison, and that she is now twenty years old.

In his Oral Affidavit, Herrera also testified that the legal papers in question, which included certain hospital records, went to the issue of his daughter's custody arrangements in 1987, an issue dealt with by the Family Court. But Herrera also testified that his daughter was represented at that court hearing by her own counsel, and he did not explain why he could not communicate his concerns to his daughter's counsel, nor why, once he realized the papers were lost, he or the daughter's attorney did not obtain another set of hospital records.

*Discussion*

Summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilities the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988), *citing Celotex*, 477 U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of

summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991).

When a motion for summary judgment is made and the nonmoving party will bear the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991). However, if the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither "genuine" nor "material" and will not prevent the court from granting the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a material fact is 'genuine' ... if the evidence is such that a reasonably jury could return a verdict for the nonmoving party"). Thus, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Finally, the court must look to the substantive law to determine which facts are "material," to wit, disputed facts that might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. It follows, then, that "[e]ntry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir.1991).

### I. *Herrera Failed to State a Claim Pursuant to § 1983*

#### A. Section 1983 Criteria

Section 1983 provides that "[e]very person who, under color of [law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity...." Civil Rights Act of 1871, 42 U.S.C. § 1983. The Supreme Court has in-terpreted the "plain words" of this statute as imposing liability "only for conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and its laws." *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

#### 1. *Deliberate Indifference*

To state a claim pursuant to 42 U.S.C. § 1983 for violation of rights afforded by the Fourteenth Amendment, an inmate must allege facts sufficient to support his claim that prison officials were deliberately indifferent to those rights. *See Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). In *Daniels*, an inmate brought an action pursuant to § 1983 against prison officials to recover damages for injuries he allegedly sustain when he slipped on a pillow negligently left on a stairway in the prison. The Supreme Court held that negligence by government employees is not a denial of due process: "the Due Process clause protects against an affirmative abuse of power; it is simply not implicated by a *negligent* act of an official causing loss of or injury to life, liberty, or property." 474 U.S. at 328, 106 S.Ct. at 663.

In *Davidson*, an inmate brought a damages action against prison officials pursuant to § 1983, claiming they had violated his rights under the Fourteenth Amendment by negligently failing to protect him from another inmate. The plaintiff had written a note regarding the threats that had been made against him, and the note came into the possession of prison officials. No action was taken to protect the plaintiff, and two days later he was attacked and suffered serious injuries. The Supreme Court interpreted *Daniels* to mean that "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." 474 U.S. at 347, 106 S.Ct. at 670.

Rejecting the plaintiff's negligence claim, the Supreme Court noted that the prison officials' "lack of due care ... led to serious injury, but that lack of care simply does not approach the sort of abusive government

conduct that the Due Process Clause was designed to prevent, *id.* at 347–48, 106 S.Ct. at 670–71, and concluded that ·"the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials," *id.* at 348, 106 S.Ct. at 671. The plaintiff must show that the defendant acted with "deliberate or callous indifference" to the plaintiff's constitutional rights. *Id.* at 347, 106 S.Ct. at 670.

The principles set forth in *Daniels* and *Davidson* have been applied in granting summary judgment against an inmate's complaint in which it was alleged that a disciplinary hearing was negligently conducted by prison officials insofar as they allowed the introduction of false evidence against the inmate and disregarding the inmate's procedural rights. This negligence allegedly resulted in the inmate being held improperly in punitive keeplock. The district court held that, "to the extent that plaintiff's complaint alleges that the defendants were negligent in that they 'should have known' of the constitutional violations, *Daniels* precludes the maintenance of an action under § 1983 based upon such allegations." *Balabin v. Scully,* No. 84 Civ. 5253 (LLS), 1986 WL 5378, at *1, 1986 U.S. Dist. LEXIS, slip op. at *3 (S.D.N.Y. May 6, 1986); *see also Friedman v. Young,* 702 F.Supp. 433, 437 (S.D.N.Y. 1988) (relying on *Daniels* in holding· that "to the extent that the complaint is construed to allege a tortious, negligent act on the part of [the Defendant], it must fall").

### 2. *Fault and Causation*

■ Section 1983 claims require that a plaintiff establish both the defendant's fault and the causal connection between the defendant's actions and the plaintiff's injury. Thus, liability of a supervisory official under § 1983 cannot be premised on the principle of *respondeat superior. See Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 693–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). A defendant's personal involvement in the alleged constitutional violation is a prerequisite to recover damages, *see Rizzo,* 423 U.S. at 371–73, 373–77, 96 S.Ct. at 604–05, 605–07, and the plaintiff must allege that the defendants "were directly and personally responsible for the purported unlawful conduct ...," *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883 (2d Cir.1987). *See Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) ("Absent some personal involvement by [the Superintendent of a DOCS facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

### B. Herrera's Allegations

In the matter at hand, Herrera brings this action pursuant to § 1983, as set forth in his First Cause of Action, on the ground that his constitutional rights under the Due Process Clause of the Fourteenth Amendment were violated when the Defendants: first, hindered and delayed Herrera's motion papers from reaching the appropriate courts to litigate his claims; second, destroyed or lost items that were needed by Herrera to perfect an issue pertaining to his criminal conviction; and third, obstructed Herrera's motion to the Family Court.

### C. Insufficiency Allegations Regarding Fault and Causation

■ Initially, it must be noted that Herrera has failed to allege facts that, if true, would support a finding that any of the Defendants were personally involved in the alleged First Violation. Only Scully and Miller are implicated by virtue of their positions as Superintendent of Green Haven and Supervisor of the Inmate Correspondence Unit, respectively. However, even if one of the Defendants were personally involved in this alleged violation, Herrera himself stands in the causal sequence of events to preclude fault from being attributed to that Defendant. Herrera had an obligation to be aware of the balance of his inmate account, and to determine whether their were sufficient funds in his account for the expense of sending his legal correspondence via certified mail.

Herrera's allegations regarding the Second Violation, if true, identify only Johnson, Seitz, and Winch as potential parties to whom fault could be attributed and whose acts are causally related to Herrera's alleged injury. The allegations do not support the conclusion that any other Defendants were personally involved.

The allegations regarding the Third Violation identify only Miller, Maldonado, and Raimo as potential parties to whom fault could be attributed and whose acts are causally related to Herrera's alleged injury.

Therefore, summary judgment is appropriate as to the various Defendants who are not implicated by Herrera's allegations regarding each of the alleged violations on the insufficiency of his pleadings to set forth facts that could raise a genuine issue of the fault of those Defendants and the causal relationship between any of their acts and his alleged injuries.

### D. No Reasonable Trier of Fact Could Find Deliberate Indifference

■ A review of Herrera's allegations reveals that, even when they are read in a light most favorable to him, they fail to support the conclusion that the Defendants acted with the requisite deliberate indifference to and callous disregard of Herrera's constitutional rights to trigger § 1983 liability. The allegations regarding each violation are considered in turn.

#### 1. First Violation

With regard to the First Violation, namely, the delayed legal mail of June 3, 1987, Herrera's allegations fail to support the conclusion that the Defendants acts in an intentional and deliberate manner to deprive him of his constitutional rights by preventing his legal mail from arriving at the court in a timely manner. In fact, Herrera's statement of the facts is consistent with DOCS policies and procedures regarding the processing of inmate mail, and with the fact that the cost of certified or special delivery mail will not be advanced automatically by Green Haven if the inmate does not have sufficient funds in his account.[4]

Furthermore, in light of Scully's response to Herrera regarding the general difficulties the Inmate Correspondence Unit had been encountering with the processing of inmate mail and his offer to write the court on Herrera's behalf explaining any untimeliness in the arrival of Herrera's Reply Affirmation demonstrate that any wrongdoing on the part of the Defendants falls far short of the deliberate indifference to an inmate's constitutional rights required to sustain a § 1983 action.

#### 2. Second Violation

■ With regard to the Second Violation, namely, the opening of Herrera's personal mail and the confiscation of the photographs, Herrera's allegations fail to support a § 1983 action. The record on this motion indicates that the Defendants and their subordinates were acting consistently with the policies and procedures set forth in the various DOCS directives relating to incoming mail and the possession of photographs by inmates.

DOCS Directives 4421 and 4422 require that all incoming inmate mail be opened and examined for any cash, checks, money orders, or contraband. DOCS Directive 4421 also requires that all incoming privileged and legal correspondence be opened and inspected in the presence of the inmate to whom it is addressed, and if any contraband is found, it will be confiscated and the inmate will be given a receipt for it.

DOCS Directives 4910 and 4421 state that inmates are allowed to possess only an identification card issued by DOCS. Any other identification cards or photographs which could be characterized as "identification pho-

---

**4.** The procedure for processing outgoing inmate mail at Green Haven is as follows: An inmate is permitted the amount of postage totaling five first-class letters per week, free of charge, to use in any manner of mailing the inmate chooses. Beyond that amount, an inmate's account will be debited for the amount of first-class postage for legal mail, and an inmate's legal mail will be forwarded by first-class mail even if the inmate does not have sufficient funds in his account. The cost of certified or special delivery mail is not advanced automatically. Rather, the mail, with the inmate's disbursement form requesting that it be sent by certified or special delivery mail is sent by the Correspondence Unit to Inmate Accounts where the balance in the inmate's account is checked and the disbursement is either approved or disapproved. No mail may be held by Inmate Accounts. Thus, Inmate Accounts must either authorize the expenditure for the requested postage or sent the mail back to the Correspondence Unit marked "insufficient funds." In the latter event, the mail will be returned to the inmate with the disbursement form, an "authorized advance form," and a form letter advising the inmate how to proceed.

tographs" because of their appearance must be confiscated and turned over to the Office of the Superintendent for Security. The concern underlying this policy is that an inmate may use the identification photographs to create false identification and gain access to restricted areas or leave the facility.

The photographs that were sent to Herrera and that presently are in the possession of this Court are sufficiently similar to those described in DOCS Directives 4035 and 4038 to qualify as "identification photographs." Therefore, it was appropriate that Johnson confiscate them and turn them over to Seitz.

Herrera alleges that the Defendants "destroyed and/or lost items that were needed by Plaintiff to perfect an issue pertaining to his criminal conviction" Compl. ¶ 36(b). However, as was the case with the delayed mail of June 3, 1987, these allegations do not give rise to a claim above the level of mere negligence. Herrera has failed to allege any facts to support the conclusion that the Defendants deliberately violated his constitutional rights by confiscating and misplacing or destroying the photographs.

Herrera's allegations are weakened further by the uncontradicted facts that he was promptly notified that the photographs had been misplaced, that Winch took the appropriate steps to replace them in a timely manner, and that Herrera was instructed to contact the IRC to arrange for the inclusion of the photographs with any papers he might file with the courts. Had Herrera chosen to make such arrangements with the IRC, he could have had full use of the photographs for legitimate legal purposes. Instead Herrera chose to have them sent to this Court for permanent inclusion in the voluminous record of his action.

On the record of this motion, the Court finds that the allegations regarding the Defendants' actions giving rise to the Second Violation do not support a cause of action pursuant to § 1983.

### 3. Third Violation

■ Herrera's allegations regarding the Third Violation, namely the alleged obstruction of his motion papers to the Family Court, fail to generate a sustainable claim

pursuant to § 1983. As was the case with Herrera's June 3, 1987 mail, Herrera's allegations here suggest that the motion papers in question were handled in a negligent manner but not in a manner rising to the level of a deliberate indifference to Herrera's constitutional rights.

Miller testified in her sworn affidavit that she has no record or personal recollection of Herrera's legal mail or the letter he allegedly wrote on January 12, 1988, requesting the return of his legal mail. She could only surmise that the disbursement form accidentally became separated from the mail when the form was returned after having been marked "insufficient funds."

There is nothing in the record to suggest how Herrera's legal mail ended up on Maldonado's desk, and Herrera alleges no facts to support a claim that this was done out of a deliberate indifference to his rights. Although Maldonado gave Herrera's mail to another inmate to hold until Herrera's return, there is nothing in Herrera's allegations to show that Maldonado intended to deprive Herrera of his rights. The Defendants concede that Maldonado's actions did not conform with DOCS policies and procedures, but the facts alleged are consistent with the conclusion that Maldonado's intention was to see that Herrera's legal mail was returned to him: The inmate to whom the mail was given assertedly knew Herrera and sent copies of the contents of the mail to the Family Court, while retaining the originals to give the Herrera on his return.

Further, Herrera's grievance in this matter was fully investigated. Scully's review of the grievance investigation and his response to the mishandling of Herrera's mail by apprising Maldonado of his error and instructing him on the proper procedure for dealing with the mail of an inmate who is unavailable support the conclusion that this error did not constitute the sort of deliberate violation of Herrera's rights that would give rise to a § 1983 claim.

### E. Herrera Was Not Denied Access to the Courts

#### 1. The Right to Access

■ An inmate has a constitutional right to reasonable access to the courts. *See*

*Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), *aff'g*, *Gilmore v. Lynch*, 319 F.Supp. 105, 109 (N.D.Cal.1970) ("Reasonable access to the courts is a constitutional imperative which has been held to prevail against a variety of state interests."). However, "the Constitution requires no more than reasonable access to the courts." *Pickett v. Schaefer*, 503 F.Supp. 27, 28 (S.D.N.Y. 1980).

■■■ To make out a § 1983 claim that he has been denied reasonable access to the courts, an inmate must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action. *See Hikel v. King*, 659 F.Supp. 337, 340 (E.D.N.Y.1987) (plaintiff failed to show how the destruction of documents could have impeded any suit that he had or could have brought); *Pickett*, 503 F.Supp. at 28. A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation. *See Jones v. Smith*, 784 F.2d 149, 151–52 (2d Cir.1986) (inmate was not denied access when he was not permitted to have legal advance sheets read while confined to Attica's Special Housing Unit for violation of prison rules); *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988) (unintentional delay in mailing inmate's legal mail was noted in time to permit inmate to re-prepare and timely file his writ application).

### 2. *Herrera's Denial of Access Claim is Insufficient*

■■■ In his Second Cause of Action, Herrera alleges, that his First and Fourteenth Amendment rights of access to the courts were violated when the Defendants: first, withheld Herrera's legal mail and prevented it from reaching the appropriate fora; second, gave Herrera's legal mail to other inmates who neither participated in or were parties to Herrera's litigation; and third, took Herrera's material which he needed to perfect and present legal issues to the court.

With regard to the First Violation, Herrera has failed to offer any evidence to show that he was actually denied access to the court and suffered any injury as a result of the delay in the mailing of his Reply Affirmation. The Complaint does not allege any facts that would suggest that the Reply Affirmation would have affected the outcome of his post-conviction motion. Furthermore, Scully had offered to intervene by writing the court on Herrera's behalf to assure his full access to the court and to secure his right to participate in the proceedings. However, Herrera refused to take advantage of Scully's offer.

■■■ With regard to the Second Violation, Herrera testified in his Oral Affidavit that he intended to use the photographs to challenge the identification of him based on a photo array admitted in evidence at his trial. However, Herrera offered no evidence to suggest that the inclusion of the photographs would have changed outcome of his post-conviction motion. Additionally, because the photo array was admitted at trial, the court deciding the post-conviction motion had access to it as part of the trial record. Thus, Herrera was not deprived of an opportunity to present his identification argument. Finally, the Defendants made reasonable and timely efforts to replace the photographs after they were misplaced.

■■■ With regard to the Third Violation, Herrera has alleged no injury whatsoever. In his Oral Affidavit, Herrera admitted that he was never denied visitation, and that his daughter periodically visited him at the prison. Herrera did testify that his correspondence with the Family Court also addressed his concern about his daughter's custody. However, he made no showing that the documents in question would have had any impact on the outcome of that proceeding. In fact, the daughter was represented by her own counsel, and Herrera had the opportunity to communicate with her counsel and to obtain copies of those documents once it was realized they were lost. Herrera made no effort to address these issues.

Herrera has failed to show that the alleged violations interfered with his access to the courts or prejudiced an existing action in any

way. Therefore, summary judgment is granted against his § 1983 denial to access claim as set forth in the Second Cause of Action of the Complaint.

### F. Herrera Has No § 1983 Cause of Action For His State Law Claims

■ It is a well-settled principle that the Due Process Clause of the Fourteenth Amendment does not convert violations of state law into deprivations of constitutional rights. *See Screws v. United States*, 325 U.S. 91, 108–09, 65 S.Ct. 1031, 1038–39, 89 L.Ed. 1495 (1945). Further, the Supreme Court has recognized that not every legally cognizable injury by a state official establishes a violation of the Fourteenth Amendment and triggering a § 1983 cause of action. *See Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). The Due Process Clause is not implicated by a state official's negligent act. *See Daniels*, 474 U.S. at 335–36, 106 S.Ct. at 667.

■ Therefore, while the Defendants' actions generally conformed with the policies and procedures set forth in the DOCS Directives, even if Herrera's allegations are held to support the claim that the Defendants acted negligently in violating the Directives, such negligent violations of those Directives still does not give rise to a § 1983 cause of action.

### G. Summary Judgment Against Herrera's § 1983 Claims Is Granted

On the record before this Court of the allegations of the First Cause of Action brought pursuant to § 1983, when viewed in the light most favorable to Herrera, a rational trier could not find for him. Thus, there is no genuine issue of material fact and entry of summary judgment in favor of the Defendants is appropriate and is granted. *See Binder*, 933 F.2d at 191.

### II. *Herrera Failed to State a Claim Pursuant to § 1985*

#### A. Section 1985(2) Criteria

■ A cause of action may be maintained pursuant to § 1985 if the facts allege (1) a conspiracy between two or more persons, (2) to deter a witness "by force, intimidation, or threat" from attending any court of the United States or testifying freely in a matter pending therein, which (3) causes injury to the claimant. 42 U.S.C. § 1985(2). *See Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir.1984); *Morast v. Lance*, 807 F.2d 926, 930 (11th Cir.1987).

■ Filing papers in court does not constitute "attending" court within the meaning of § 1985. *See Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th Cir.) (en banc) ("Attend, simply put, means 'to be present at.'"), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). Moreover, the statute applies only to conspiracies to prevent witnesses from appearing in *federal* courts. *See Morast*, 807 F.2d at 930 (§ 1985(2) did not apply to plaintiff's claim that defendants attempted to deter him from testifying before an administrative agency, not a federal court); *Redcross v. County of Rensselaer*, 511 F.Supp. 364 (N.D.N.Y.1981) (§ 1985(2) not applicable to attempts to prevent plaintiff from testifying in state court).

#### B. Herrera's Allegations

■ Herrera alleges in his Third Cause of Action that Raimo, Miller, and Maldonado violated his constitutional rights secured by the First, Fifth, and Fourteenth Amendments when they conspired to: first, "harbor, hide, and cover the truth or the other's actions which denied Plaintiff access to the Courts"; and second, "distort the facts, and withhold information that was material to the grievances filed, and knowingly, willfully, and purposely performed and expressed a blatant disregard for Plaintiff's constitutional and statutory rights." Compl. ¶ 39.

These claims necessarily fail because even if Herrera offered evidence of such a conspiracy, which he did not, such interference with his filing of papers in the State Supreme Court and Family Court as he has alleged does not give rise to a § 1985 cause of action. On the one hand, "filing papers" does not constitute "attending" within meaning of § 1985(2); and on the other, none of Herrera's papers were being filed or pertained to

matters in a federal court. *See Kimble,* 648 F.2d at 348; *Redcross,* 511 F.Supp. at 374.

Moreover, Herrera made no showing that Raimo, Miller, or Maldonado were involved in a conspiracy and used force, intimidation, or threats in furtherance thereof. *See Morast,* 807 F.2d at 930. In fact, Herrera's allegations on this point are contradicted by his own statement of the facts, to wit, that every alleged violation brought to the Defendants' attention through his grievances was investigated and efforts were made by the Defendants to redress any negligent actions of Green Haven employees and to facilitate his access to the courts.

Finally, as was noted above with respect to Herrera's § 1983 claims, he has failed to make any showing that he suffered an actual injury as a result of the alleged conspiracy. *See id.*

Therefore, Herrera has failed to raise a genuine issue of material fact, and the Defendants are entitled to summary judgment on the claims set forth in the Third Cause of Action as a matter of law.

### III. *Herrera's State Law Claims Fail*

■ The law of the Second Circuit requires that a plaintiff must do more than merely rely on the allegations set forth in his complaint to withstand a defendant's motion for summary judgment supported by sworn affidavits. *See Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983) ("mere allegations in the non-moving party's pleadings are insufficient to show that there is a triable issue of fact if the moving party had made the necessary Rule 56(c) showing"); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (opposing party "may not rest upon mere conclusory allegations or denials," *quoting SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978)); *United States v. Pent–R–Books, Inc.,* 538 F.2d 519, 592 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977) (if moving party carries its preliminary burden, the opposing party may not defeat motion by relying on contentions in pleadings; rather, it must produce "significant probative evidence tending to support" its position); *Kletschka v. Driver,* 411 F.2d 436, 449 (2d Cir.1969) (general allegations sufficient to state a cause of action in complaint become insufficient once opposed by a motion for summary judgment supported by affidavits).

■ Herrera's Fourth Cause of Action alleges that the Defendants violated the law of New York State by failing to comply with the policies and procedures promulgated by DOCS and set forth in Directives 4421 and 4040. The relevant sections of Directive 4421 address the procedure to be followed in inspecting an inmate's privileged correspondence and Directive 4040 describes the grievance procedure and the Inmate Grievance Program. Herrera fails to offer any evidence beyond the recitation of allegations in the Complaint to support these claims. Herrera had failed to produce the requisite "significant probative evidence tending to support" his position in the face of the Defendants' sworn affidavits. *Project Release,* 722 F.2d at 968. As a result, this Court must necessarily find those affidavits to have persuasive weight in determining the viability of Herrera's claims.

Herrera contends that Directive 4421 was violated by Johnson when he opened Herrera's mail and confiscated the photographs that were sent to Herrera on July 12, 1987. While Herrera contends that the envelope was opened and the photographs removed before Johnson brought the envelope and letter to him, in violation of DOCS procedures, Johnson testified in his sworn affidavit that he followed those procedures by opening the envelope in Herrera's presence, examined the contents, and confiscated only the two photographs. Herrera was also given a receipt for the confiscated photographs.

In the absence of any factual support for the allegations in Herrera's Complaint regarding Johnson's handling of Herrera's mail and photographs, this Court accepts Johnson's sworn statements as true for the purposes of this motion, and grants summary judgment against Herrera's claims arising from the alleged violations of Directive 4421.

■ With regard to Herrera's allegations of the Defendants' Directive 4040 violations, a review of the record and the sworn affida-

vit of·Earl Hughs, the Supervisor of Inmate Grievance Resolution at Green Haven, supports the conclusion that the Defendants acted in compliance with established policies and procedures in handling each of Herrera's grievances.

■ In response to Herrera's grievance regarding the events of the alleged First Violation, the IGRC investigated the grievance. That investigation was reviewed by the Office of the Superintendent, and a report was issued by Scully's in which he made the offer to intervene on Herrera's behalf with the New York Supreme Court. Similarly, the responses of Scully and Winch to Herrera's letter regarding the confiscation of the photographs was consistent with DOCS procedures. The Defendants acted in conformity with Directive 4040 when his grievance arising out of the allegations of the Third Violation was dismissed with leave to refile upon his leaving Green Haven to appear in Family Court. Finally, Scully's denial of Herrera's request to have his future legal mail forwarded to Albany for processing also was appropriate and consistent with DOCS policies and procedures, and this was evidenced in the affirmation of Scully's decision on Herrera's appeal to the Central Office Grievance Review Committee.

Therefore, summary judgment as to Herrera's claims arising from alleged violations of Directive 4040 is granted.

*Conclusion*

For the reasons set forth, the Court finds that there is no genuine issue of material fact remaining for trial in this action, and that the Defendants are entitled to judgment as a matter of law on every claim raised by Herrera. The Defendants' motion for summary judgment is granted.

It is so ordered.