Jacqueline BARBERA, as Administratrix of the Goods, Chattels, and Credits of Lena Margaret Barbera, Plaintiff–Appellee,

v.

William French SMITH, individually and as the former Attorney General of the United States; John S. Martin, Jr., individually and as the former United States Attorney for the Southern District of New York; and Stephen Schlessinger, individually and as a former Assistant United States Attorney for the Southern District of New York, Defendants,

John S. Martin, Jr., and Stephen Schlessinger, Defendants–Appellants.

Nos. 3, 4, Dockets 87–6054, 87–6098.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1987.

Decided Dec. 30, 1987.

William M. Kunstler, New York City (Ronald L. Kuby, of counsel), for plaintiff-appellee.

Peter C. Salerno, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Steven E. Obus, Asst. U.S.Atty., New York City, of counsel), for defendants-appellants.

Before FEINBERG, Chief Judge, PIERCE and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge:

This is a constitutional tort action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for the wrongful death of Lena Margaret Barbera in violation of the due process clause of the fifth amendment. The complaint named as defendants William French Smith, the former Attorney General of the United States, John S. Martin, Jr., the former United States Attorney for the Southern District of New York, and Stephen Schlessinger, a former Assistant United States Attorney. In the District Court for the Southern District of New York, Shirley Wohl Kram, *Judge*, the complaint was dismissed as to former Attorney General Smith for lack of personal jurisdiction. 654 F.Supp. 386, 392 (S.D.N.Y.1987). That dismissal is not before us in the present appeal. Defendants Martin and Schlessinger asserted their entitlement to prosecutorial immunity and moved to dismiss the complaint for failure to state a claim, or in the alternative, for summary judgment. The district court denied the motion, and, as modified by an order dated April 1, 1987, certified for in-

terlocutory appeal pursuant to 28 U.S.C. § 1292(b) its rulings that the complaint states a claim upon which relief can be granted and that summary judgment should be denied. Appellants appeal as of right from the denial of their claims of immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and this Court granted them permission to appeal simultaneously from the certified rulings pursuant to 28 U.S.C. § 1292(b). The two appeals were consolidated, and, finding that the complaint's allegations of negligence fail to state a claim for relief against either defendant, that the allegations of recklessness fail to state a claim against defendant Martin, and that defendant Schlessinger is entitled to qualified but not absolute immunity from suit, we now reverse.

## BACKGROUND

In 1981, the United States Attorney's Office for the Southern District of New York, then headed by John S. Martin, Jr. ("Martin"), was investigating the bankruptcy of Candor Diamond Corporation ("Candor") for possible fraud committed by it, by its president, Irwin Margolies ("Margolies"), and by its employees. The investigation was led by then Assistant United States Attorney Stephen Schlessinger ("Schlessinger"). In the course of this investigation, the government sought and eventually secured the cooperation of Lena Margaret Barbera ("Barbera"), an accountant who had been employed as Candor's comptroller and who was believed to have knowledge of some of its then suspected fraudulent acts. In exchange for her cooperation, Barbera was permitted to plead guilty to a single-count information charging her with fraud, and the United States Attorney's Office promised to make no recommendation with respect to the sentence to be imposed. The complaint alleges that during the course of the government's dealings with Barbera, Barbera's attorney requested that Schlessinger arrange for police protection for her, as she allegedly feared that her cooperation with the government "might result in physical harm or death to her." This request was denied for reasons not known to us.

In or about December 1981, during a conversation between Schlessinger and Margolies' attorney, Henry Oestericher ("Oestericher"), Schlessinger is alleged to have mentioned that Barbera and an unnamed female also employed by Candor were cooperating with the government. Oestericher is said to have passed this information on to Margolies, who hired Donald P. Nash ("Nash"), a contract killer, to murder Barbera and the other employee. Shortly thereafter, Jenny Soo Chin ("Chin"), a former Candor employee and a close friend of Barbera, disappeared. Apparently, Margolies believed that Chin was the other cooperating witness. Although her body was never found, Nash apparently displayed a photograph of Chin's dead body to Margolies as proof that he had carried out part of their agreement.

Soon after Chin's disappearance, Barbera's attorney allegedly again requested police protection for her. Again, Schlessinger denied the request. On April 12, 1982, Barbera was abducted from the rooftop parking area at Pier 92 in Manhattan and was later shot to death. Three employees of CBS Inc. were also killed when they attempted to come to her aid. Margolies and Nash were eventually convicted in New York state court of Barbera's murder.

This *Bivens* action was brought in July 1984 in the United States District Court for the Eastern District of New York by Jacqueline Barbera, as administratrix of Barbera's estate, to recover damages for the allegedly negligent and reckless acts of Martin and Schlessinger, which allegedly caused Barbera to be wrongfully deprived of her right to life in violation of the due process clause of the fifth amendment to the Constitution. The action was transferred to the Southern District of New York shortly thereafter.

In May 1985, Martin and Schlessinger moved in the alternative for summary judgment or to dismiss the complaint on the ground that, *inter alia*, it failed to state a claim for relief. In particular, they asserted that they are entitled to both absolute

and qualified immunity from suit for actions taken in the course of their official duties. Judge Kram rejected their claims and these appeals followed.

## DISCUSSION

### I. FAILURE TO STATE A CLAIM

■ The complaint charges the defendants with depriving Barbera of her right to life in violation of the due process clause of the fifth amendment. As to Martin, the complaint merely alleges in conclusory language that he negligently and recklessly failed to train and supervise Schlessinger adequately. It does not allege any personal involvement by Martin in the decisions to reveal Barbera's identity and to deny her protection. Nor does it allege that Martin created or acquiesced in a policy or practice of poor training and supervision of subordinate Assistant United States Attorneys. Nor does the complaint plead any other facts sufficient to support an inference that Martin was *reckless* in managing his subordinates. Consequently, we must conclude that, in this respect, the complaint fails to state a claim for relief with respect to Martin. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986); *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.) (citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed. 2d 561 (1976)), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

■ The allegations of *negligence* with respect to both Martin and Schlessinger fail for a different reason. Insofar as the complaint charges them with negligently depriving Barbera of her right to life, it fails to state a constitutional claim. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

The remaining allegation charges Schlessinger with a reckless constitutional violation. In *Daniels*, the Supreme Court explicitly left open the question of whether grossly negligent or reckless conduct would be sufficient to allege a constitutional violation. 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3. We find no occasion to address

that question here, however, because we resolve this claim on grounds of immunity.

### II. IMMUNITY

We are asked to determine herein whether a prosecutor is immune from suit for revealing a witness' identity to the subject of a potential prosecution, and for refusing to provide police protection for that witness. We conclude, upon the facts presented, that he is not absolutely immune, but that qualified immunity does attach.

#### A. *Absolute Immunity*

■ It is firmly established that prosecutors are entitled to absolute immunity from suits for damages arising from activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *see Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987). This protection encompasses "all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation...." *Barrett v. United States*, 798 F.2d 565, 571–72 (2d Cir.1986). But when a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available. *Powers v. Coe*, 728 F.2d 97, 103–04 (2d Cir.1984); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981).

It is not at all clear what actions are so closely related to a prosecution as to come within the ambit of absolute immunity. We have previously held that a prosecutor is absolutely immune with respect to a decision whether or not to prosecute, *Dacey v. Dorsey*, 568 F.2d 275, 278 (2d Cir.), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *see also Atkins v. Lanning*, 556 F.2d 485, 488 (10th Cir.1977) (district attorney immune from suit for naming wrong person in arrest warrant); *Betts v. Richard*, 726 F.2d 79, 81 (2d Cir.1984). Such protection also applies to the conduct of actual litigation, *Lee v. Willins*, 617 F.2d 320, 322 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980), including the presentation of evidence to a

grand jury, *Maglione v. Briggs*, 748 F.2d 116 (2d Cir.1984) (per curiam), and the conduct of a plea bargain, *Taylor v. Kavanagh*, 640 F.2d at 453.

 Absolute immunity is not available, though, when a prosecutor undertakes conduct that is beyond the scope of his litigation-related duties. Thus it does not apply when the prosecutor releases information or evidence to the media, *Powers v. Coe*, 728 F.2d at 103, authorizes or directs the use of wiretaps, *id.*, assists in the execution of a search or seizure, *see Robison v. Via*, 821 F.2d 913, 918–19 (2d Cir. 1987); *Hampton v. Hanrahan*, 600 F.2d 600, 632 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), or engages in personal activities totally unrelated to his assigned duties, *see Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir.) (no immunity for judge who misuses power of office to assist friend in case not pending before him), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). None of these tasks is sufficiently closely related to the litigation function for which the common law immunity doctrine was developed.

While we have previously stated that prosecutorial immunity extends to actions involving potential, as well as actual litigation, *see Barrett v. United States*, 798 F.2d at 571–72, we also have said that a prosecutor's investigative duties are not covered by this protection. *See Powers v. Coe*, 728 F.2d at 103–04; *Taylor v. Kavanagh*, 640 F.2d at 452. We have not previously addressed the question of whether the evidence-analyzing and case preparation functions performed by a prosecutor before the actual filing of an information or indictment constitute prosecutorial or investigative tasks. *See also Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33 (open question). We note that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts. *See, e.g., Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 678 (9th Cir.1984) (defendant arrested but not indicted; prosecutor absolutely immune from suit for destruction of exculpatory evidence). Conversely, where no proceedings have begun, qualified immunity is the norm. *See, e.g., Barrett v. United States*, 798 F.2d at 573 (federal attorneys who advised state attorneys in suit against state entitled only to qualified immunity because federal government was only prospective defendant); *see also Austin v. Borel*, 830 F.2d 1356 (5th Cir.1987) (social worker not entitled to absolute prosecutorial immunity for filing verified complaint in support of petition used by district attorney to commence legal proceedings).

We do not intend to establish a bright line commencement-of-proceedings test, *see also Powers v. Coe*, 728 F.2d at 104 (bright lines avoided in prior decisions), and we are mindful of the Supreme Court's admonition that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Nevertheless, as we discuss below, we find the conduct in this case to be more closely linked to the prosecutor's investigative duties than to his role as government litigator.

As we see it, the pre-litigation function that a prosecutor performs has at least two aspects: (1) the supervision of and interaction with law enforcement agencies in *acquiring* evidence which might be used in a prosecution, and (2) the *organization, evaluation, and marshalling* of this evidence into a form that will enable the prosecutor to try a case or to seek a warrant, indictment, or order. While both of these categories of activities occur before the commencement of formal legal proceedings, and therefore may be loosely termed "investigative," we believe that the first category consists of actions that are of a police nature and are not entitled to absolute protection, *see, e.g., Powers v. Coe*, 728 F.2d at 103, 104; *Robison v. Via*, 821 F.2d at 918–19. We express no view with respect to

the second category because we find that the conduct in this case falls within the ambit of law enforcement supervision and the gathering of evidence.

■ The record indicates that Schlessinger was assigned to *investigate* Margolies and Candor in or about July 1981 with a view towards the possibility of prosecuting them and their employees for fraud and other offenses. Schlessinger Decl. ¶ 2; *see also People v. Margolies*, 125 Misc.2d 1033, 1034–35, 480 N.Y.S.2d 842, 844 (N.Y.Sup. Ct.1984). In the course of this investigation, the government sought and eventually obtained the cooperation of Barbera, *see* Schlessinger Decl., Exh. A, who agreed to testify against Margolies and Candor before a federal grand jury. *See id.; People v. Margolies*, 125 Misc.2d at 1035, 480 N.Y. S.2d at 845. During the course of the investigation, in December 1981, and prior to reaching a formal cooperation agreement with Barbera, which was not finalized until March 1982, Schlessinger is alleged to have had occasion to speak with Margolies' attorney, Oestericher, at which time Barbera's cooperation was apparently discussed. The record does not reveal why Barbera's identity was allegedly disclosed, and we note that Schlessinger's affidavit only indicates in the most general terms that any discussion with Margolies' counsel pertained to a "potential prosecution of Irwin Margolies." Schlessinger Decl. ¶ 4.

Even if, as appellants hint in their brief, Schlessinger was trying to "induc[e] the target himself to cooperate," we are led to conclude from the record as a whole that the government was still actively pursuing its investigation, and was not yet engaged in the process of prosecuting a criminal defendant. Nor had the process of prosecution begun when, in or about January 1982, Schlessinger is alleged to have twice refused to arrange for police protection for Barbera. Indeed we note from the public records of the district court in which Margolies was eventually charged with various counts of mail and tax fraud as a result of this investigation that an arrest warrant was not issued for him until May 4, 1982,

and that he was not indicted until June 3, 1982.

By contrast, in late 1981 and early 1982, at the time of the alleged disclosure of Barbera's identity and the refusal to provide her with police protection, the government was still seeking evidence, including testimony from witnesses such as Barbera, that would enable it to prosecute Margolies and others involved in Candor's fraudulent acts. We do not believe that this task was so "intimately associated with the judicial phase of the criminal process" as to fall within the *Imbler* dicta that some of a prosecutor's investigative functions may be entitled to absolute immunity, *see* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Although we do not foreclose that possibility in an appropriate case, Schlessinger's activities at the time of the alleged conduct herein seem to have involved primarily the directing of an investigation by police and other law enforcement personnel. Plaintiff's complaint in fact alleges, in its only reference to the scope of Schlessinger's duties, that he "had primary responsibility for the ... investigation of Candor." As we stated in *Lee v. Willins*, 617 F.2d at 322, however, "Where the alleged harm is inflicted independently of the prosecution, ... absolute immunity will not attach." The conduct in this case was not sufficiently linked to the court-related duties of a prosecutor to entitle Schlessinger to absolute immunity.

### B. *Qualified Immunity*

■ Prosecutors are entitled to qualified immunity from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The inquiry is one of objective reasonableness. *Id.; Wyler v. United States*, 725 F.2d 156, 159 (2d Cir.1983).

■ The government owes a duty to protect a person from harm only if there is a "special relationship" between that person and the government. *See Ellsworth v. City of Racine*, 774 F.2d 182, 185 (7th

Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Even today, "[t]he contours of what constitutes a 'special relationship' . . . are hazy and indistinct." *Id.* Yet, unless it was clearly established in 1981–82 that the government owed a duty of protection to someone in Barbera's position, qualified immunity will insulate Schlessinger's actions.

The Supreme Court held in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976), a case involving medical care for prison inmates, that under some circumstances, the government would be obligated to protect the well-being of certain persons under its control. This rule was expanded in *Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134 (2d Cir.1981), to extend to persons not within the government's immediate physical control—children in foster care—to whom the government had assumed a duty of care. Its application to noncustodial situations was first addressed in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), where the Supreme Court concluded that the government owed no duty of protection to a person killed by a paroled inmate released from state custody. The *Martinez* Court found the injury to be too remote a consequence of the state's action for liability to attach, and it did not even reach the question of whether such a killing amounted to a constitutional violation or whether it constituted state action. *Id.* at 285 & n. 11, 100 S.Ct. at 559 & n. 11. The Court "gave only vague hints as to what circumstances, if any, might create such a special relationship and render the state liable. . . ." *Estate of Gilmore v. Buckley,* 787 F.2d 714, 721 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986).

■ Based on the limited caselaw in existence at the time of Barbera's death, and particularly because of the absence of any significant caselaw on governmental duties arising from non-custodial relationships, we cannot say that it was clearly established that the government had created or assumed a special relationship with Barbera. *See Ellsworth v. City of Racine,*

774 F.2d at 185–86 (in 1980, government owed no general duty to protect family of witness who had become the target of threats due to the witness' scheduled testimony in a criminal case). Moreover, when this Court held in 1980 that the federal courts lack subject matter jurisdiction under 28 U.S.C. § 1331 over suits to compel the government to provide protection to a cooperating witness, we strongly hinted that no such claim for relief could be stated. *See Doe v. Civiletti,* 635 F.2d 88, 89, 90 (2d Cir.1980) (Attorney General has broad discretion in deciding whether to admit someone to Witness Protection Program; government attorneys cannot make representations on the subject). In 1981–82, it would have been speculative, at best, to conclude that Barbera was entitled to police protection, or that the government was otherwise obliged to safeguard her from those against whom she was going to testify. Certainly, these are not the types of objectively reasonable conclusions that we can infer reasonable persons, including reasonable prosecutors, would have reached. We need express no opinion on how this question would be resolved based on the caselaw as it exists today. We do conclude that Schlessinger is entitled to qualified immunity in connection with his conduct in this case, given the time of occurrence and the state of the law at the time.

## CONCLUSION

In sum, we find that the complaint fails to state a constitutional claim against Martin insofar as it alleges supervisory liability. We conclude that the complaint also fails to state a claim against either Martin or Schlessinger insofar as it alleges that they negligently deprived Barbera of her right to life without due process of law. And we hold that Schlessinger is not entitled to absolute immunity for his actions but is entitled to the protection of qualified immunity. Accordingly, the decision of the district court denying defendants' motion to dismiss or for summary judgment is reversed, and we remand the case with

instructions to enter judgment in favor of Martin and Schlessinger.