**Stephen BERMAN, Plaintiff,**

v.

**Stanley K. TURECKI and Special Agent Steven F. Chapman, Defendants.**

No. 94 Civ. 5127 (PKL).

United States District Court, S.D. New York.

May 5, 1995.

Stephen Berman, New York City, pro se.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Jeffrey Oestericher, of counsel), for defendant Chapman.

Frankfurt, Garbus, Klein & Selz, P.C., New York City (Edward H. Rosenthal, of counsel), for defendant Turecki.

### OPINION AND ORDER

LEISURE, District Judge:

This is a *pro se* action brought by Stephen Berman ("Berman") against Stanley K. Turecki ("Turecki"), a prominent child psychiatrist, and Steven F. Chapman ("Chapman"), a special agent of the Federal Bureau of

Investigation. Berman alleges that Chapman, acting under color of authority, engaged in a conspiracy with Turecki to deprive plaintiff of his civil rights under the United States Constitution. Specifically, Berman contends that defendants entered into a conspiracy to deprive him of his rights under the First, Fourth, Fifth, Sixth and Eighth Amendments. Defendant Chapman moves to dismiss the action, pursuant to Fed. R.Civ.P. 12(b)(1), 12(b)(5) and 12(b)(6), and alternatively moves for summary judgment, pursuant to Rule 56. Defendant Turecki moves to dismiss the action, pursuant to Rules 12(b)(1) and 12(b)(6). For the reasons stated below, defendants' motions are granted.

## BACKGROUND

The dispute giving rise to the instant action can perhaps best be described as vicious, malicious and pernicious. A brief review of the history of this case is a necessary percursor to a proper understanding of the matter currently before this Court. In 1985, Turecki was separated from his wife, Lucille Turecki ("Ms. Turecki"), and in 1987, they were divorced. Prior to their separation, Turecki and Ms. Turecki had been friends and neighbors of Berman. Afterwards, Ms. Turecki and Berman began dating.

Turecki alleges that, during the summer of 1991, Ms. Turecki began to threaten him. He asserts that she threatened that she would circulate widely a photograph of him using cocaine unless he purchased a life insurance policy naming her as beneficiary, which he did. Turecki maintains that, after a brief hiatus, the threats resumed.[1] He observes that the resumption coincided with the institution, by both himself and Ms. Turecki, of legal actions against each other in state court relating to the amount of his alimony and child support payments.[2] On March 8, 1993, the Honorable Phyllis B. Gangel–Jacob, Justice of New York Supreme Court, First Judicial District, ordered Turecki to pay past due child support monies. On March 16, 1993, Turecki placed a telephone call to his wife during which he threatened "to kill her and throw acid in her face."

Turecki contends that on or about March 17, 1993, Ms. Turecki agreed that she would not distribute the photographs if he increased the amount of his child support payments. On April 8, 1993, Turecki received a copy of a letter from Berman to Ms. Turecki's attorney stating that although Berman had agreed to limit the use of the photographs, he still intended "to take such steps that [he] deem[ed] necessary to try and bring [Turecki's] behavior to public scrutiny." *See* Declaration of Steven F. Chapman, sworn to on November 16, 1994 ("Chapman Aff."), ex. C. On April 13, 1993, Turecki received word that his publisher had received a copy of the photograph of him using cocaine.[3]

---

1. For example, on September 5, 1992, Turecki received an envelope in the mail containing a photograph of him using cocaine and a typewritten note addressed to "Dear Stan," stating "I thought that your publisher might want to use this photo on the back cover of your book, so I am sending him a copy. Have a nice Day." The return address on the letter was that of Berman.

2. In their respective papers in state court, Ms. Turecki accused Turecki of illegal narcotics use, forgery of medical prescriptions, spousal abuse, and failure to meet child support payments, and Turecki charged his former wife with blackmail and extortion.

3. The photograph was apparently accompanied by a letter signed by Berman stating,

   This letter is in regard to one of your authors, Dr. Stanley Turecki, author of "The Difficult Child" and who I believe is currently working on another book.

   Dr. Turecki has been in litigation with his ex wife, Lucille Turecki over his failure to live up to his child support obligations. After a recent decision that went against him, Dr Turecki on March 16th called his wife and threatened to "throw acid in her face."

   This type of behavior along with his past history of Drug abuse will be leading to extensive and negative publicity at the soon to be scheduled hearing.

   I think it might be wise for you to suggest Dr. Turecki cease this type of behavior which might impact negatively on his future book sales.

   Plaintiff's Response to Defendant Chapman's Motion to Dismiss ("Plaintiff Opp."), ex. 3.

   Berman maintains that the letter was an attempt to seek the assistance of Turecki's publisher in preventing threatening acts by Turecki. *See* Plaintiff's Response to Defendant Turecki's Motion to Dismiss ("Plaintiff Opp2") at 4.

On April 16, 1993, defendant FBI Agent Chapman interviewed Turecki, and was told by him that Ms. Turecki and Berman were blackmailing him. Turecki furnished Chapman with originals of correspondence from Berman, as well as various other letters and handwritten notes relating to Ms. Turecki and Berman. At the suggestion of the FBI, Turecki agreed to record conversations between himself and Ms. Turecki and Berman. Four such telephone calls were in fact recorded. Based on the evidence that he had amassed, Chapman, with the assistance of an Assistant United States Attorney, drafted a statement in support of a criminal complaint charging Berman and Ms. Turecki with conspiring, in violation of 18 U.S.C. § 371, to mail threatening communications, in violation of 18 U.S.C. § 876, and an affidavit in support of a search warrant for Berman's residence.

Based upon the criminal complaint, the Honorable Kathleen Roberts, Magistrate Judge of this Court, found probable cause that a crime had been committed and issued warrants for Berman's and Ms. Turecki's arrest and for a search of Berman's apartment.[4] On April 23, 1993, Berman and Turecki were arrested, and items were seized from Berman's apartment, including photographs and negatives of Turecki using cocaine and copies of various correspondence. In addition, three firearms and several boxes of ammunition were confiscated.[5]

Due to a prior felony conviction, Berman's possession of the firearms violated 18 U.S.C. § 922(g)(1). After plea negotiations, Berman agreed to plead guilty to a felony information charging illegal possession of firearms. On July 23, 1993, all extortion and blackmail charges were dismissed against both Berman and Ms. Turecki. On October 12, 1993, Berman pleaded guilty to the firearms charge. Although Berman's plea could have resulted in a sentence of as much as ten years imprisonment and a $250,000 fine, on December 14, 1993, he was sentenced by the Honorable Charles M. Metzner, Judge of this Court, to only a $2,000 fine and a $50 special assessment.

Berman brings the instant action against Chapman and Turecki for conspiring to deprive him of his civil rights. Specifically, he alleges that, in furtherance of the conspiracy, Chapman intentionally failed adequately to conduct an investigation into Turecki's allegations, filed a criminal complaint against Berman with the intention of misleading the magistrate judge, and put forth sworn allegations which he knew to be false. Berman contends that the warrants for his and Ms. Turecki's arrest, and the warrant to search his apartment, were improper and constituted a violation of his constitutionally protected rights. Berman seeks declaratory relief against Chapman, in his official capacity, and monetary relief against both defendants individually.

## DISCUSSION

### A. *Standard for Motion to Dismiss*

■ Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action where a plaintiff has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff. *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Therefore, "the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "[T]he court's task on a Rule 12(b)(6) motion is not to rule on the merits of

---

4. Specifically, the search warrant authorized seizure of "photographs of Dr. Turecki, typewriters, typewriter ribbons and balls, word processing equipment, computer disks, federal express receipts, and documents, including letters and copies of letters, concerning Dr. Turecki."

5. On or about May 7, 1993, Turecki wrote Justice Gangel–Jacob informing her of recent events and asking her to reverse her March 8, 1993 ruling and to terminate his alimony and support payments. Justice Gangel–Jacob denied the request.

plaintiffs' claims, but to decide whether, presuming all factual allegations of the complaint to be true, and drawing all reasonable inferences in the plaintiff's favor, the plaintiff could prove any set of facts which would entitle him to relief." *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir.1992) (citations omitted).

### B. Claims Against Chapman

#### 1. Heck v. Humphrey

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).[6]

In *Heck,* the Supreme Court held that just as a complainant in a malicious prosecution action must allege and prove that the prior criminal proceeding was terminated in his favor, so must a § 1983 complainant. *See Heck,* —— U.S. at —— – ——, 114 S.Ct. at 2371–72. This "requirement avoids parallel litigation over the issues of probable cause

and guilt and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution." *Id.* —— U.S. at ——, 114 S.Ct. at 2371 (citations omitted) "[T]o permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.*

■ In the instant action, the bulk of Berman's charge is that Chapman procured warrants for his arrest and the search of his apartment based upon sworn declarations which contained material omissions and allegations that he knew to be false.[7] In order to prevail on his constitutional claims, Berman must demonstrate that correction for the alleged falsehoods and omissions in the sworn declarations would defeat the finding of probable cause. *See Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *Cartier v. Lussier,* 955 F.2d 841, 846 (2d Cir.1992).[8] Such a determination, however, would imply that the search of Berman's residence was invalid, the evidence seized should be suppressed, and Berman's conviction should be overturned. This would constitute an impermissible collateral attack on his firearms conviction. Consequently, since plaintiff cannot show that his criminal proceeding was terminated in his favor, his civil action must be dismissed under *Heck.*[9]

---

**6.** Although *Heck* dealt with a § 1983 action, federal courts have analogized claims arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (*"Bivens* claims") to claims under 42 U.S.C. § 1983 and have used § 1983 cases as precedent for *Bivens* decisions. *See Butz v. Economou,* 438 U.S. 478, 498–500, 98 S.Ct. 2894, 2906–07, 57 L.Ed.2d 895 (1978); *Chin v. Bowen,* 833 F.2d 21, 24 (2d Cir.1987); *see also Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) (a section 1983 claim asserted against a federal agency and federal officers should be construed as *Bivens* claim); *Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.) (per curiam) (construing *pro se* section 1983 claims against federal defendants as *Bivens* claims), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988).

**7.** The Court notes that the time-frame for the alleged violations of Berman's constitutional rights necessarily must be restricted to the period

between the preparation for the acquisition of the warrants and the conclusion of the search of his apartment. Berman does not claim that his civil rights were violated by his being charged with, and subsequently pleading guilty to, the possession of firearms. *See* Plaintiff Opp. at 9 ("by the time the weapons violation was discovered the constitutional violation was completed.")

**8.** The Court will examine in the next section whether Berman, can, in fact, make such a demonstration.

**9.** Berman attempts to distinguish between the original charges of blackmail and extortion that were dismissed, and the charge of possession of firearms as a convicted felon. He contends that *Heck* should only apply to the latter charge, and not to the former ones, which he considers to have been terminated in his favor and so susceptible to a *Bivens* action. The firearms charge,

In addition, the doctrine of collateral estoppel bars relitigation of an issue that was "actually and necessarily determined by a court of competent jurisdiction ... in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Berman had the opportunity to litigate the claim that his arrest, and the search of his residence that led to his arrest, were not supported by probable cause, but he chose not to do so.[10] His guilty plea requires estoppel, in favor of the United States, in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case. *Cf. McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). A guilty plea is not just an admission of unlawful conduct, it is a waiver of all the constitutional rights embodied in the right to a jury trial. *See McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1171. A guilty plea "disposes of any issue pertaining to the constitutionality of [p]laintiff's arrest, interrogation, search and prosecution." *See Reese v. York,* 571 F.Supp. 1046, 1048 (N.D.Tex.1983); *see also United States v. Arango,* 966 F.2d 64, 66 (2d Cir.1992). This Court finds that Berman had a full and fair opportunity to challenge the alleged violations of which he now complains, but he instead chose to plead guilty and waive his right to institute such a challenge. Consequently, Berman is collaterally estopped from now bringing his claims of constitutional violations arising out of his arrest and the search of his residence.[11]

### 2. *Failure to State a Claim*

To state a *Bivens*[12] claim, Berman must specifically plead facts showing a constitutional violation. *See, e.g., Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The specificity requirement prevents insubstantial suits that are based on vague and conclusory pleadings from proceeding to trial. *See Harlow v. Fitzgerald,* 457 U.S. 800, 808, 817–18, 102 S.Ct. 2727, 2733, 2738, 73 L.Ed.2d 396 (1982); *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 256 (2d Cir.1984), *cert. denied,* 470 U.S. 1035,

---

however, is inextricably intertwined with his *Bivens* claim because both resulted from the allegedly unconstitutional search of his apartment. Consequently, to succeed on his *Bivens* claim, Berman must prove that the search was unconstitutional, and by extension, the items seized pursuant to the search should have been suppressed. Effectively, this would constitute a collateral attack on Berman's conviction through the vehicle of a civil suit, which is exactly the outcome *Heck* sought to prevent. *See Heck,* —— U.S. at —— – ——, 114 S.Ct. at 2371–72 ("[i]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of *any outstanding criminal judgment* against the plaintiff, the action should be allowed to proceed.") (emphasis added).

Accordingly, Berman's guilty plea on the firearms charge precludes his *Bivens* action for the purported unconstitutionality of the warrants and search related to the blackmail and extortion charges because such an action would effectively constitute a collateral attack on the firearms conviction.

**10.** Plaintiff addresses the matter squarely when he says, "while the government chose to forgo prosecution and not risk unpleasant circumstances, the Plaintiff had no such option. Facing prosecution and sentence upon firearms charges, based on a presumptively valid warrant, Plaintiff had little choice but to accept the consequences and avoid harsh penalties." Plaintiff Opp. at 18. Plaintiff had a choice, however, and he decided not to "risk unpleasant circumstances." By so doing, he lost his opportunity to challenge the constitutionality of the search that gave rise to the weapons charge.

**11.** Berman contends that the government is using the fortuitous discovery of firearms as a mechanism to vindicate and legitimate an otherwise illegal search. This view, however, mischaracterizes the reason why plaintiff's claim is precluded. Recovery of the guns did not purge an otherwise unlawful search. Rather, Berman's failure to challenge the search at the time of his guilty plea, prevents him from now doing so collaterally through a civil action.

**12.** The keystone of the *Bivens* decision was the Court's recognition that the commands of the Fourth Amendment create an affirmative federal right to be free from unreasonable searches and seizures, a right which could be redressed in money damages even in the absence of explicit congressional action authorizing the remedy. In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. Such an action, however, must be brought against the federal officials in their individual capacities. *See Robinson,* 21 F.3d at 502.

105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) ("[c]onclusory allegations of conspiracy are insufficient to survive either a 12(b)(6) motion for dismissal ... or in the alternative a motion for summary judgment in defendants' favor") (citations omitted).

■ Berman must plead facts that show an agreement or some form of joint or concerted action. *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991); *see also Lewal v. Doe*, 1994 WL 263521 at *3 (S.D.N.Y.1994) (Leisure, J.) ("plaintiff makes only vague and conclusory allegations of conspiracy that will not survive a motion to dismiss"). The Second Circuit has stated, "[i]t is imperative for courts to examine with great care any suit charging that prosecution witnesses conspired with the prosecutor, and to dismiss on pre-trial motion those that are clearly baseless." *San Filippo*, 737 F.2d at 256.

Berman fails to allege any facts from which a common scheme or an agreement between Chapman and Turecki can be inferred. Berman merely makes the conclusory assertion that Turecki and Chapman entered into a conspiracy to deprive him of his rights under the First, Fourth, Sixth and Eighth Amendments. Complaint ¶ 2. Berman provides no supporting facts, however, from which a trier of fact could infer a meeting of the minds between Chapman and Turecki concerning a course of action intended to deprive Berman of his constitutional rights. Consequently, Chapman's motion to dismiss should be granted.[13] *See San Filippo*, 737 F.2d at 252; *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977).

**13.** Of course, this finding is equally applicable to Turecki's motion, as will be discussed in the appropriate section of this opinion.

**14.** The Court notes that qualified immunity is not a defense to a claim against a government official in his official capacity, but only shields a defendant official who is sued in his individual capacity. *See Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir.1993).

**15.** "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who know-

### 3. *Qualified Immunity*

■ FBI officers enjoy a qualified immunity from damage suits arising out of their official conduct. *See Anderson v. Creighton*, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987).[14] "The relevant question ... [is] whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the ... officers possessed." *Id.* at 641, 107 S.Ct. at 3040. The defense of qualified immunity is established when (1) at the time defendant acted, it was unclear whether plaintiff's asserted interests were protected by federal law, or (2) defendant could have reasonably believed that his actions did not contravene an established federal right. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 531–32 (2d Cir.1993); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).[15] This Court finds that it was objectively reasonable for Chapman to have believed both that probable cause existed and that his actions did not contravene an established federal right. Consequently, Chapman is immune from liability in a *Bivens* action on grounds of qualified immunity.[16]

■ A defense of qualified immunity should be decided at the earliest possible stage in a litigation, and it is a defense that often can and should be decided on a motion for summary judgment. *See Castro v. U.S.*, 34 F.3d 106, 112 (2d Cir.1994). On a motion for summary judgment on the ground of qualified immunity, defendant bears the burden of showing that as to that defense there is no genuine issue of material fact. *Id.*[17] Plaintiff asserts that Chapman applied for a search warrant and an arrest warrant based upon allegations that he knew were false and

ingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (citations omitted).

**16.** A *Bivens* claim is barred by the decision that there was probable cause for the arrest and prosecution. *See Bernard v. United States*, 25 F.3d 98, 105 (2d Cir.1994)

**17.** The Court notes that the same principles of qualified immunity apply in section 1983 actions against state officials and *Bivens* actions against federal officials. *See Ayeni v. Mottola*, 35 F.3d 680 (2d Cir.1994) at 688 n. 10.

that he also omitted information that he knew was material.[18] This Court finds, however, that the purported misstatements and omissions, do not raise a genuine issue of fact as to whether Chapman had a reasonable basis to believe that there was probable cause.[19]

Preliminarily, the Court notes that a plaintiff who argues that a warrant was issued on less than probable cause faces a "heavy burden." *See Rivera v. United States*, 928 F.2d 592, 602 (2d Cir.1991). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). In order to successfully challenge the grant of a warrant, a plaintiff "must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Golino*, 950 F.2d at 870 (citations omitted).

The only false statement that Berman alleges Chapman affirmatively made was

Chapman's assertion that Berman, in his letter to Turecki's publisher, had threatened Turecki.[20] This Court finds that Chapman's statement was neither false nor did it constitute a statement necessary to the finding of probable cause. If the statement had never been made, probable cause would still have existed. Moreover, this Court finds that the letter could reasonably be interpreted as a threat to Turecki. This is especially true given Turecki's allegations that Berman threatened to distribute more widely the photograph of Turecki, an allegation which Chapman reasonably could have believed.[21]

Berman maintains that Chapman omitted a number of material facts in an effort to deceive the magistrate and thereby induce the issuance of an improper warrant. This Court finds, however, that none of the alleged omitted facts would have cast doubt on the existence of probable cause. Specifically, Berman claims: (1) Chapman knew that Turecki was a long time drug abuser; (2) Chapman knew that Turecki had accused Berman of blackmail in an action in state court and lost;[22] (3) Chapman knew that Turecki had previously threatened to kill Ms. Turecki and throw acid in her face; (4) Chapman knew that the state court judge had ruled in Ms. Turecki's favor in the litigation over Turecki's child support and alimony obli-

---

**18.** Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, the shield of qualified immunity is lost. *See Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir.1994). "In sum, to survive the defendants' motion for summary judgment on this issue, the plaintiffs must satisfy three conditions: they must have made an offer of proof supporting specific allegations of deliberate or reckless misrepresentation ...; the alleged misrepresentations must be legally relevant to the probable cause determination; and there must be a genuine issue of fact about whether the magistrate would have issued the warrant on the basis of 'corrected affidavits.'" *Id.* at 574 (citations omitted).

**19.** "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994) (citation omitted). Probable cause is evaluated under an objective standard. *See Lindsey v. Loughlin*, 616 F.Supp. 449, 451 (E.D.N.Y.1985). Probable cause to arrest consists of "such facts

and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983) (citations omitted); *see also Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994).

**20.** As a preliminary matter, it is questionable whether Chapman did, in fact, characterize Berman's letter as threatening.

**21.** For example, Chapman could have reasonably thought that the letter was menacing in that it demonstrated the sincerity of Berman's previous warnings.

**22.** In addition to not being a material omission that would have affected a reasonable officer's belief that probable cause existed, there is no evidence to suggest that such an accusation was ever the subject matter of the state court marital proceeding.

gations.[23]

This Court finds that the alleged misstatements would not either individually or collectively affect a reasonable officer's belief that probable cause existed. The inclusion of any or all of the alleged omitted information would not have materially impacted the probable cause determination. Summary relief should be granted "if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed." *Cartier*, 955 F.2d at 845.

### 4. Service of Process

Having decided the *Bivens* claim on the merits, this Court need not reach Chapman's alternative claim that the action against him in his individual capacity should be dismissed for lack of service of process.

### 5. Subject Matter Jurisdiction

■■■ Having decided the *Bivens* claim on the merits, this Court need not reach Chapman's alternative claim that the action against him in his official capacity should be dismissed for lack of subject matter jurisdiction. The Court simply notes that under the doctrine of sovereign immunity, an action for damages will not lie against the United States without consent.[24] Because an action against a federal agency or federal officer in his official capacity is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity unless such immunity is waived.[25] *See FDIC v. Meyer*, — U.S. —, — – —, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308

(1994). Consequently, to the extent that Berman's claim constitutes a *Bivens* action for damages against Chapman in his official capacity, it is properly dismissed for want of subject matter jurisdiction.[26]

### C. Claims Against Turecki

### 1. Failure to State a Cause of Action

■■■ As this Court earlier observed, Berman fails to allege any facts from which a common scheme or an agreement between Chapman and Turecki can be inferred. Berman merely makes the conclusory assertion that Turecki and Chapman entered into a conspiracy to deprive him of his rights under the First, Fourth, Sixth and Eighth Amendments. Complaint ¶ 2. Berman provides no supporting facts, however, from which a trier of fact could infer a meeting of the minds between Chapman and Turecki concerning a course of action intended to deprive Berman of his constitutional rights. Consequently, Turecki's motion to dismiss should be granted. *See San Filippo*, 737 F.2d at 252; *Ostrer*, 567 F.2d at 553.

### 2. Private Individual

■■■ Private causes of action against a federal official for the deprivation of constitutional rights are governed by the *Bivens* decision. *Bivens*, however, did not provide a right to bring suit against a private citizen acting in his individual capacity. "[I]t is axiomatic that a *Bivens* action can be brought only against one who is engaged in governmental (or state) action or, to put the matter another way, who is acting under color of federal law." *Lewal*, 1994 WL

---

23. Berman also alleges that Chapman applied for the search and arrest warrants based on allegations he knew to be false. This type of unsupported and conclusory allegation, however, is not sufficient to survive a motion to dismiss.

24. To the extent that Berman's action against Chapman, in his official capacity, is for declaratory relief and not for damages, it should be dismissed for the reasons stated above.

25. The United States has not waived sovereign immunity for constitutional tort claims. *See FDIC v. Meyer*, — U.S. —, —, 114 S.Ct. 996,

1001, 127 L.Ed.2d 308 (1994). Consequently, damage actions against the federal government arising out of constitutional violations have been "routinely dismissed for lack of subject matter jurisdiction." *Keene Corp. v. United States*, 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

26. It is worth mentioning that even if Berman's Fourth Amendment claim had merit, he makes no factual allegations concerning the purported deprivation of his rights under the First, Sixth and Eighth Amendments.

263521 at \*3.[27] In the instant action, plaintiff's complaint fails to provide any basis for a finding that Turecki was acting under color of federal law. Consequently, Turecki's motion to dismiss Berman's action should be granted.

### 3. *Estoppel*

█ Finally, even if Turecki were considered a government actor against whom a *Bivens* action could be maintained, as examined at greater length above, Turecki's action would still be barred by the principles of collateral estoppel and those propounded in *Heck*. Accordingly, Turecki's motion to dismiss should be granted.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action are granted, and this action is dismissed in its entirety.

### SO ORDERED.

---

**27.** Although the Second Circuit has stated that, "[a] private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right," *Dwares v. the City of New York*, 985 F.2d 94, 98 (2d Cir.1993), the facts in that case distinguish it. In *Dwares*, "skinheads" attacked plaintiff in the presence of police officers who made no attempt to intervene and who had previously provided assurances that they would not endeavor to intercede. That case involved misconduct on the part of the government actor, and this Court has found no such misconduct in the instant action.

In *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the Supreme Court stated,

[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*Price*, 383 U.S. at 794, 86 S.Ct. at 1157. Again, however, the facts of the instant case distinguish it. In *Price*, three Mississippi law enforcement officials were allegedly involved in a conspiracy with fifteen private individuals to release prisoners from jail at night, intercept them, assault and kill them, and dispose of their bodies. In the instant case, as stated above, plaintiff has not even adequately alleged facts to support a finding of conspiracy between Chapman and Turecki.